UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In Re:<br><br>CRIMSONBIKES, LLC<br><br>Involuntary Debtor | Chapter 7<br>Case No. 21-10278(JEB) |

**CRIMSONBIKES, LLC'S MOTION TO DISMISS AND REQUEST FOR COSTS, FEES AND DAMAGES, OR IN THE ALTERNATIVE CONVERT THE CHAPTER 7 CASE TO ONE UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

NOW comes, CrimsonBikes, LLC ("CrimsonBikes") and hereby moves to dismiss the Involuntary Petition under Chapter 7 filed by petitioning creditors, SmartEtailing, Inc., ("SmartEtailing"), CVI-TCB Commercial, LLC, ("CVI-TCB") and Michael Jaeger ("Jaeger") (collectively the "Petitioning Creditors"). CrimsonBikes purported debt to SmartEtailing is the subject of preexisting litigation in the District Court for the District of Minnesota (20-CV-02650-PJS-DTS) and is disputed in both amount and liability by CrimsonBikes. CrimsonBikes has more than twelve (12) creditors and therefore at least three petitioning creditors, whose claims are not "the subject of a bona fide dispute as to liability or amount", as required under 11 U.S.C. § 303(b)(1), are required to file an Involuntary Petition against CrimsonBikes. Where, as here, the Petitioning Creditors cannot meet its burden of establishing the absence of a bona fide dispute as to liability or amount, the petition must be dismissed. *Metz v. Dilley (In re Dilley)*, 339 B.R. 1, 6 (B.A.P 1st Cir. 2006) ("[t]he petitioning creditors have the burden to show that their claims are not the subject of a bona fide dispute.").

In addition, CrimsonBikes requests for the Court to award it its costs, reasonable attorney's fees incurred in responding to the involuntary petition and punitive damages. The

Petitioning Creditors had no good faith basis for representing to this Court that SmartEtailing holds a claim against CrimsonBikes that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount. As such, under 11 U.S.C. § 303(i)(1), the Court may award CrimsonBikes costs and reasonable attorneys fees when an Involuntary Petition is dismissed. In addition, CrimsonBikes also request the Court award punitive damages as provided for in 11 U.S.C. § 303(i)(2).

## I. Relevant Facts

CrimsonBikes is a small business located in Cambridge, Massachusetts, and incorporated in the State of Massachusetts. CrimsonBikes specializes in bicycle and bicycle accessory sales, and bicycle repairs. In addition to its physical store, CrimsonBikes conducts business over its website, www.crimsonbikes.com. SmartEtailing is a Minnesota corporation that "provides website, marketing, and data solutions to bike retailers."

On December 20, 2018, CrimsonBikes and SmartEtailing entered into an agreement where SmartEtailing was to provide CrimsonBikes with a website and online sales support and services. CrimsonBikes entered into a separate agreement with third-party Stripe, a payment processing software and service company, on March 21, 2019. CrimsonBikes accepted payment for bicycles and products through the payment service provided by Stripe.

In early 2020, CrimsonBikes began experiencing service and supply chain disruptions due to the COVID-19 pandemic, and had difficulty fulfilling orders. These supply chain disruptions affected everyone in the cycling industry. Bicycles and products sold by CrimsonBikes were delayed, and these delays caused many customers to either cancel their orders or return their products to CrimsonBikes for refunds. Upon information and belief, many customers sought refunds directly from their credit card companies through Stripe. Stripe in turn

then sought reimbursement from SmartEtailing (through a separate agreement between Stripe and SmartEtailing which CrimsonBikes is not a party to). In October 2020, SmartEtailing, without notice, “locked” CrimsonBikes out of their online order system which prohibited CrimsonBikes from accessing customer orders and records. Being locked out of their ordering system made it nearly impossible for CrimsonBikes to issue refunds to those customers who chose not to wait for their bikes or to fulfill orders to waiting customers. Through CrimsonBikes diligent efforts, they were able to recreate many of their records and issue appropriate refunds or fulfill the customer orders. SmartEtailing’s actions by locking CrimsonBikes out of the online system without notice was a breach of the contract between the parties was done in bad faith and caused CrimsonBikes substantial damage.

On December 23, 2020 SmartEtailing commenced a civil action against CrimsonBikes in the District Court of Minnesota. After filing, SmartEtailing amended its Complaint and ultimately served CrimsonBikes on January 26, 2021. CrimsonBikes hired counsel in Minnesota and both parties agreed to extend the answer deadline to March 9, 2021. Before, CrimsonBikes filed its answer to the Complaint, including defenses and counterclaims, and counsel’s prepared motion to dismiss[1], SmartEtailing initiated the within Involuntary Bankruptcy case on March 3, 2021. Essentially, this matter is a two-party dispute between SmartEtailing and CrimsonBikes. It is apparent that SmartEtailing initiated this Involuntary Petition to gain an “upper hand” in other litigation and end around the process it began in Minnesota.

---

[1] Counsel in Minnesota is Attorney Ryan Dornberger and Patrick Arenz of Robins Kaplan, LLP. Attorney Dornberger has confirmed to undersigned counsel these facts and that a motion to dismiss various counts of the Complaint is prepared and ready to file.

## II. **Legal Argument**

11 U.S.C. § 303(b) permits only eligible petitioning creditors to commence an involuntary bankruptcy case. Among other requirements, an eligible petitioning creditor must be an entity that holds a claim "that is not contingent to liability or the subject of a bona fide dispute as to liability or amount…" *Id.* In addition, if an alleged debtor has twelve or more creditors, no fewer than three eligible petitioning creditors must join the involuntary petition. *Id.* If a claim is subject to a bona fide dispute, then the holder of that claim is ineligible to be a petitioning creditor. "The petitioning creditors have the burden to show that their claims are not the subject of a *bona fide* dispute as part of their *prima facie* case…Once the petitioning creditors satisfy this threshold, the burden then shifts to the debtor to establish a *bona fide* dispute." *Dilley* at 6.

In 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2006 (hereinafter "BAPCA") added the phrase "as to liability or amount" after the phrase *bona fide* dispute in section 303(b)(1). As a result of this amendment, any dispute regarding the amount that arises from the same transaction and is part of the underlying claim "renders the claim subject to a *bona fide* dispute." *See In re Rosenberg*, 414 B.R. 826, 845-846 (Bankr. S.D. Fl 2009) (citation omitted). *See also, In re Elverson*, 492 B.R. 831, 842 (Bankr. E.D. Penn. 2013) ("The Bankruptcy Abuse Prevention and Consumer Act of 2005 (`BAPCA') amended Bankruptcy Code Section 303(b) to clarify the definition of "*bona fide* dispute" to include disputes as to liability *or amount.*") Therefore, a petitioning creditor lacks standing even if only a portion of the claim is subject to a *bona fide* dispute. *In re Vicor Technologies, Inc.*, 2013 WL 1397460 (Bankr. S.D. Fla.) ("It is generally accepted that the 2005 amendment to § 303(b)(1) changed this analysis so that a dispute as to any portion of a claim, even if the dollar amount

would be left undisputed, means there is a *bona fide* dispute as to the amount of the claim and such claim cannot be counted to satisfy § 303(b)(1)").

When determining whether a *bona fide* dispute exists, courts apply an objective standard so that once *prima facie* claims have been established a debtor may not rely on mere denials to the validity of a claim. *Dilley* at 6. The alleged debtor must instead demonstrate that there are substantial factual or legal questions concerning its liability. *Id.* However, "[t]he statute does not require the court to determine the outcome of any dispute, only its presence or absence. Only a limited analysis of the claims at issue is necessary." *In re Busick,* 65 B.R. 630, 637 (Bankr. N.D. Ind. 1986)

In this case, CrimsonBikes has legitimate and meritorious claims against SmartEtailing for damages caused by SmartEtailing's breach of contract. As previously described, CrimsonBikes incurred damages due to a direct result of SmartEtailing "locking" CrimsonBikes out of the online ordering system, without notice, and in breach of the contract between the parties. The fact that Stripe and SmartEtailing had an independent and separate contract (which may provide for arbitration) between them that allowed Stripe to back charge SmartEtailing provides no direct basis for a claim of SmartEtailing to CrimsonBikes. In fact, CrimsonBikes since SmartEtailing's locking has issued more than 313 returns <u>and</u> fulfilled over 2200 orders. This was at great expense to CrimsonBikes and in spite of SmartEtailing's efforts to undermine CrimsonBike's business. SmartEtailing filed the within Involuntary Petition prior to CrimsonBikes having an opportunity to present its answer, defenses, and counterclaims to the District Court.

Because SmartEtailing knew it could not meet its pleadings burden in civil court in Minnesota, it has come to Massachusetts to initiate this petition to cripple CrimsonBikes and

leverage a bankruptcy pleading to gain traction in the Minnesota case. As petitioning creditor SmartEtailing's claim is subject to a *bona fide* dispute, it is ineligible to be a petitioning creditor. As such, the numerosity requirements of 11 U.S.C. § 303(b)(1) have not been met, and this case should be dismissed.

III. **Request for Costs, Fees and Damages**

SmartEtailing knew its claim against CrimsonBikes was subject to a *bona fide* dispute and therefore filed the within case in bad faith. Pursuant to 11 U.S.C. § 303(i), CrimsonBikes is entitled to its costs, reasonable attorney's fees, and damages. Imposition of fees and costs pursuant to section 303(i)(1) of the Bankruptcy Code is within the discretion of the Court and does not require a finding of bad faith, however fees and costs are typically awarded upon dismissal. *See In re S. California Sunbelt Developers, Inc.* 608 F.3d 456, 461-462 (9th Cir. 2010) (holding § 303(i)(1) is a fee shifting provision which places burden on petitioner to establish why fees should not be awarded).

In addition to awarding fees and costs upon dismissal of an Involuntary Petition, the Court may also require the petitioner to pay punitive damages. *See* 11 U.S.C. § 303(i)(2). The imposition of damages, unlike fees and costs, must be predicated upon a finding of bad faith. 11 U.S.C. § 303(i)(2). Further, in *In re Skyworks Ventures*, and similar to the within case, the petitioner initiated suit in federal district court against Skyworks Ventures and thereafter filed an Involuntary Petition against Skyworks while the district court action was still pending. 431 B.R. 573, 575 (Bankr. D. N.J. 2010). As with this case, the Skyworks petitioner's claim was clearly in dispute, which led the court to conclude the Involuntary Petition was filed in bad faith in order to avoid prosecuting the district court suit. *Id* at 577-579. Here, SmartEtailing commenced a district court action against CrimsonBikes, but before CrimsonBikes had the opportunity to

answer, defend and asserts its own claims against SmartEtailing, SmartEtailing commenced the within Involuntary Petition. SmartEtailing knows its claims are subject to a *bona fide* dispute and therefore they are disqualified as a petitioning creditor. SmartEtailing commenced this involuntary case against CrimsonBikes in bad faith and therefore, pursuant to 11 U.S.C. § 303(i), CrimsonBikes should be awarded its costs, fees and punitive damages, in an amount to be determined by this Court.

## IV. **Conclusion**

CrimsonBikes is a successful business that was impacted by COVID-19. The supply chain of bikes has been significantly slowed due to the pandemic. CrimsonBikes now offers its customers a $150 discount if they desire to wait for their bikes, or a refund if the customer does not want to wait. CrimsonBikes continues to operate with mostly all satisfied customers. The dissatisfied customers referenced in SmartEtailing's pleadings before this Court are a direct result of SmartEtailing's actions in closing off their online system to CrimsonBikes. Without access to the information in SmartEtailing's system, CrimsonBikes has been unable to quickly resolve customer questions or refunds for those customers who do not want to wait. Despite SmartEtailing's actions, CrimsonBikes continues to work with its customers to resolve any disputes and refunds are made upon validation of claims.

CrimsonBikes continues to pay its debts as they come due and is working through some disputed claims and judgments from previous years. The going concern of CrimsonBikes is worth far more than a liquidation of its assets. CrimsonBikes currently has revenues in excess of $7 million annually. The business employs more than thirty people who will be without jobs if this case is not dismissed or required to remain in chapter 7. As with any business, this retailer has bona fide disputes and has always worked with vendors, suppliers, and customers to resolve

debts in good faith. A chapter 7 bankruptcy is more harmful to CrimsonBike's creditors, employees, and customers. CrimsonBikes provides a critical service to Cambridge and surrounding communities through its service and repair operations, event promotions, community bike rides, and bike clubs. CrimsonBikes requests this Court dismiss this involuntary petition, award costs, fees and damages, or in the alternative, convert this Chapter 7 case to one under Chapter 11 of the Bankruptcy Code.

WHEREFORE, CrimsonBikes hereby moves this Honorable Court to:

1. Enter an order denying entry of an order for relief under the Bankruptcy Code;
2. Enter an order dismissing the Involuntary Petition;
3. Schedule an evidentiary hearing;
4. Schedule a hearing on direct and punitive damages to be awarded to CrimsonBikes pursuant to 11 U.S.C. § 303(i) for prosecution of the Involuntary Petition;
5. In the alternative, convert this Chapter 7 case to one under Chapter 11 of the Bankruptcy Code;
6. Award CrimsonBikes its costs and reasonable attorney's fees; and
7. Grant such other and further relief as this Court deems just and proper.

Respectfully Submitted,
CrimsonBikes, LLC
By its Attorney,

<u>*/s/ John M. McAuliffe, Esq.*</u>
John M. McAuliffe, Esq. (BBO# 555109)
John M. McAuliffe & Associates, P.C.
2000 Commonwealth Ave, Suite 305
Newton, MA 02466
(617) 558-6889
john@jm-law.net

Dated: April 28, 2021